C. TONY PICCUTA (AZ SBN: 028444)
SCOTTSDALE INJURY LAWYERS, LLC
8700 E. Pinnacle Peak Road, Suite 204
Scottsdale, Arizona 85255
Telephone: (480) 900-7390
Facsimile: (480) 562-6060
tony@scottsdaleinjurylawyers.com

Attorney for Plaintiff, Dillon Rock

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Dillon Rock,<br><br>          Plaintiff,<br><br>v.<br><br>Officer N. Cummings (#1228), individually; Officer R. McCarthy (#1149), individually; Officer M. Miller (#1115), individually; Officer S. Preston (#1281), individually; Officer A. Torres (#1266), individually; Officer J. White (#1145), individually; and Does 1–10, inclusive,<br><br>          Defendants. | No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Dillon Rock, alleges as follows:

**<u>INTRODUCTION</u>**

This action arises from the vicious attack of Dillon Rock ("Dillon") by a Goodyear Police Department K-9 police dog. On October 20, 2019, no fewer than seven Goodyear police officers, including a K-9 unit, responded to a report of a family dispute involving Dillon and his parents. Upon arrival, the officers failed to conduct any meaningful investigation to determine whether Dillon presented a threat of safety to

anyone at that time.  Had they so much as spoken to Dillon's mother, the alleged "victim" and only sober member of the family, they would have learned that Dillon was unarmed and had not threatened her nor anyone with a weapon at any time.  To be clear, Dillon's mother was outside with the officers and readily available for questioning.

The officers decided that they had learned all that they needed to know from the account of a dispatcher conveying an earlier report of a neighbor.  This neighbor's report was based on a conversation with Dillon's father, who was so intoxicated upon the officers' arrival that he had trouble standing and did not know what day it was.  After deliberating among themselves for 5–10 minutes, the officers decided that the appropriate way to search for and apprehend an unarmed, 140-pound suspect, with no criminal history, was by way of Toby the police dog.  Of course, the officers did not speak with the reporting neighbor until after siccing the dog on Dillon.

After determining Dillon was likely in the back yard in a shed, at least five officers and the police dog surrounded the shed.  Then, without a canine announcement or command of any kind, the dog was let into the shed and sicced on Dillon.  The dog's handler and other officers allowed the dog to bite Dillon for approximately 40 seconds.  What makes this that much more egregious is that the dog's handler, Defendant Miller, later admitted that he immediately saw that Dillon had no weapon.  The injury to Dillon was so gruesome that one officer mentioned he had never seen anything like it.  Dillon was then transported to the hospital for emergency surgery to save his arm.  The officers then spoke more thoroughly with Dillon's parents.  In doing so, they learned what they should have known before the use of the dog—that Dillon was unarmed and had not threatened his mother as had been wrongly reported earlier in the day.

The decision to use, and the duration of, this severe use of force by Defendant Miller deprived Dillon of his right under the Fourth Amendment to be free from the use of excessive force.  Dillon's Fourth Amendment rights were similarly violated by the remaining defendants who were integral participants and failed to intervene to prevent or terminate the use of force by Defendant Miller.   Dillon is now suing the defendants in their individual capacities under 42 U.S.C. § 1983 for compensatory and punitive damages.

**JURISDICTION AND VENUE**

1. This action arises under 42 U.S.C. § 1983, conferring jurisdiction upon this Court under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the District of Arizona because a substantial part of the events or omissions giving rise to the claims occurred in the City of Goodyear, Arizona, which is within the judicial district.  28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Dillon Rock ("Dillon") is, and at all relevant times was, a citizen of Arizona residing in Maricopa County, Arizona.

4. Each of the following defendants is being sued in his individual capacity: Officer N. Cummings (#1228), Officer R. McCarthy (#1149), Officer M. Miller (#1115), Officer S. Preston (#1281), Officer A. Torres (#1266) and Officer J. White (#1145).

5. At all relevant times, the individual defendants identified in paragraph 4, above, were acting under color of state law and within the scope of their employment as Goodyear police officers, employed by the City of Goodyear, Arizona.

6. Plaintiff is ignorant of the true names and capacities of the Doe defendants who are therefore sued by such fictitious names. However, Plaintiff is informed and believes that each Doe Defendant, at all relevant times, was employed by the City of Goodyear. The reasons these true names are not yet known or ascertainable are that initial disclosures have not yet been exchanged, and Plaintiff has not yet had an opportunity to engage in other formal discovery. Upon ascertaining the true identifies of Does 1 through 10, Plaintiff will amend the Complaint or seek leave to do so as required by law.

## **STATEMENT OF FACTS**

7. On October 20, 2019, Dillon was involved in a family dispute with his mother, Yolanda Rock ("Yolanda"), and his father, Timothy Rock ("Timothy"). The dispute occurred at the residence of Dillon and Timothy, located at 17556 W. Canyon Ln., Goodyear, Arizona 85338.

8. That evening, Timothy, who was visibly intoxicated and confused, asked a neighbor to call the police. The neighbor then dialed 911 and reported the family incident.

9. From approximately 5:42 p.m. through 5:49 p.m., Defendants were dispatched to the Rock residence. Defendants arrived at the home sporadically from approximately 5:50 p.m. – 6:00 p.m.

10. Among the responding officers was Defendant Miller, the handler of the Goodyear K-9 police dog, Toby, who arrived with Miller.

11. Timothy and Yolanda were outside in front of the house when each defendant arrived. Though Timothy was visibly impaired, Yolanda was sober.

12. Upon arrival, each defendant had an opportunity to speak with Timothy and Yolanda before the use of the police dog.

13. Defendants Cummings, McCarthy, Miller, Preston and White all failed to question Timothy and Yolanda as to whether Dillon was armed with a weapon at that time or at any time that day. These defendants also failed to ask them whether Dillon had threatened Yolanda that day or at any time with a weapon.

14. Also prior to the use of the dog, Defendant Torres did question Timothy and Yolanda whether Dillon had threatened Yolanda and whether Dillon presently had a knife. Timothy responded that no, Dillon did not have a knife. Yolanda responded that Dillon had not threatened her.

15. Before Toby was sicced on Dillon, Torres made no attempt to inform the other defendants that Dillon was unarmed.

16. Defendants deliberated and surveyed the property for up to approximately 10 minutes. In doing so, they came to believe that Dillon was in the backyard.

17. At approximately 6:00 p.m., Defendant White informed Defendants Cummings, Miller and Preston that he had heard something near a shed on the far side of the property, near the back and east side of the house. When White had heard this a few minutes earlier, White was on the east side of the property. However, when White informed the other defendants of this, they were standing near the front and west side of the house.

18. At approximately 6:01 p.m., Defendant Miller gave a K9 announcement near a gate to the property at the front and west side of the house.

19. During the K9 announcement, Dillon was located in the shed near the rear and east side of the residence.  As a result, Dillon did not hear the announcement.

20. At approximately 6:01 p.m., Defendants Cummings, Preston, White and Miller, who was handling Toby, moved through the gate.  Defendant McCarthy followed approximately 1 minute and 15 seconds later.

21. At approximately 6:02 p.m., Defendants Cummings, Preston, White and Miller, along with Toby, moved north along the west side of the house and then east through the backyard toward the shed in which Dillon was located.

22. At approximately 6:03 p.m., Defendants Cummings, Preston, White and Miller approached the shed.  Toby began signaling to them that someone was inside. At this point, the officers believed that Dillon was inside the shed.

23. No K-9 announcements or commands to surrender were given.  Instead, Defendant Cummings opened the shed door so that Defendant Miller could let Toby into the shed to attack Dillon.

24. Toby entered the shed and immediately began biting Dillon.

25. Defendant Miller then pulled on the lead of Toby, who was latched onto Dillon, ultimately dragging both Toby and Dillon from the shed.

26. As Dillon was dragged out of the shed, Defendant Miller saw that Dillon did not have a weapon in his hands.  Nevertheless, Defendant Miller continued to praise and further encouraged Toby to bite Dillon.

27. Defendants Cummings, Preston, White and Miller allowed Toby to bite and violently attack Dillon for approximately 40 seconds before Toby was removed.

///

28. Defendant McCarthy was also present for the latter approximately 20 seconds that Toby was biting and attacking Dillon. McCarthy stood by and observed and failed to attempt to remove Toby.

29. During the interaction with Toby, Dillon was unarmed, screaming and recoiling from the pain. At no time did Dillon attempt to harm Toby, to actively resist the officers or to take any action other than to attempt to cover and protect himself from the bite of Toby.

30. After the use of force against Dillon, his parents were finally questioned to confirm whether Dillon had threatened Yolanda with a knife. Defendants learned that Dillon was not in possession of a knife at any time that day. They also learned that Dillon had not threatened Yolanda or Timothy with a weapon at any time.

31. As a result of the use of the police dog and of the duration of the bite, Dillon suffered a serious injury to his left arm that required emergency surgery and left him neurologically impaired. The injury was so grotesque that Defendant Preston admitted it was something he had never seen before.

32. Defendants took approximately 10 minutes to deliberate at the scene without questioning the alleged "victim" to determine whether Dillon was armed, had been armed, had made threats or presently presented a threat to the safety of anyone. Had they done so, they would have quickly learned that they were searching for a scared, unarmed, 140-pound young man who was in the fetal position in a shed. Instead, Defendants decided to deploy potentially lethal force against Dillon, sending him to the emergency room for surgery. Defendants' conduct was malicious, oppressive and/or in reckless disregard of Dillon's constitutional rights.

# FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – Violation of the Fourth Amendment

### (Against All Defendants)

33. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 32 as though fully set forth herein.

34. Defendants acted under color of state law while engaged in the conduct complained of herein. Their acts and failures to act deprived Dillon of his rights under the Fourth Amendment to the United States Constitution.

**A. Defendant Miller for the Use of Excessive Force**

35. Defendant Miller seized Dillon through physical force when Miller sicced the police dog, Toby, on Dillon.

36. Defendant Miller's use of force against Dillon was intentional, in that it was his conscious objective to do so.

37. Neither the use of the police dog nor the duration of the use was objectively reasonable. As such, both the decision to use Toby and the duration of the use of force were excessive.

38. Defendant Miller's conduct was the actual and proximate cause of Dillon's injuries.

**B. Defendants Cummings, McCarthy, Preston, Torres and White as Integral Participants and for the Failure to Intervene**

39. Defendants McCarthy, Preston, Torres and White were present near the shed when Defendant Miller sicced Toby on Dillon. These defendants provided cover,

opened the shed door and/or helped to restrain Dillon while the police dog continued to bite him.

40. Approximately two minutes prior to the use of force by Miller, Defendant Torres interviewed Timothy and Yolanda. In doing so, he learned that Dillon was unarmed and had not threatened his mother with a weapon. Defendant Torres failed to promptly communicate what he had learned to the other defendants. He then remained in front of the house to question witnesses and to provide cover or back-up.

41. Defendants Cummings, McCarthy, Preston, Torres and White all had a duty and realistic opportunity to intervene so as to prevent or terminate the use of force by Defendant Miller and his K-9 police dog, Toby.

42. Defendants Cummings, McCarthy, Preston, Torres and White also participated in a meaningful way in the use of force by Defendant Miller and Toby.

43. Defendants Cummings, McCarthy, Preston, Torres and White, through their omissions and participation in Defendant Miller's affirmative acts, actually and proximately caused Dillon's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dillon Rock prays for judgment in his favor and against Defendants as follows:

A. For general and special damages in an amount according to proof at trial;

B. For punitive damages in an amount sufficient to punish and deter, according to proof at trial;

C. For pre-judgment interest as allowed by law;

D. For costs and attorney's fees; and

E.   For such other relief as the Court deems just and proper.

Dated: _September 21, 2020__          SCOTTSDALE INJURY LAWYERS, LLC

__/s/ *C. Tony Piccuta*_____
C. Tony Piccuta, Esq.
Attorney for Plaintiff, Dillon Rock

## JURY TRIAL DEMAND

Plaintiff, pursuant to Fed. R. Civ. P. 38, demand a trial by jury on all issues so triable.

Dated: _September 21, 2020__          SCOTTSDALE INJURY LAWYERS, LLC

__/s/ *C. Tony Piccuta*_____

C. Tony Piccuta
Attorney for Plaintiff, Dillon Rock