**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dillon Rock,<br><br>        Plaintiff,<br><br>v.<br><br>N. Cummings, et al.,<br><br>        Defendants. | No. CV-20-01837-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for stay filed by Defendant Mike Miller ("Officer Miller"). (Doc. 103.) The motion is fully briefed (Docs. 104, 105) and neither side requested oral argument. For the reasons that follow, the motion is denied.

**RELEVANT BACKGROUND**

I.    <u>The Underlying Incident</u>

In October 2019, several members of the Goodyear Police Department responded to a 911 call. (Doc. 84 at 1.) The subject of the call was Dillon Rock ("Plaintiff"), who lived with his father in the same neighborhood as the caller. (*Id.*) The caller reported—mistakenly, as it turns out—that Plaintiff had just threatened Plaintiff's parents with a knife. (*Id.*) This information was conveyed to the officers on their way to the scene. (*Id.*)

After Plaintiff became aware of the officers' arrival, he went into his backyard and hid in a shed. (*Id.*) Before entering the backyard, Officer Miller announced that if Plaintiff did not come out, Officer Miller would release a police dog, Toby, who would bite Plaintiff. (*Id.*) After Plaintiff did not respond to this announcement—which, he contends, he did not

hear—several officers entered the backyard. (*Id.*) Upon arrival at the shed, and without providing any additional warnings, another officer opened the door and Officer Miller let Toby inside. (*Id.* at 1-2.) Toby bit Plaintiff for approximately 41 seconds, dragging Plaintiff out of the shed and causing Plaintiff to sustain extensive arm injuries that later required surgery. (*Id.* at 2.)

II.    This Action

In September 2020, Plaintiff initiated this § 1983 action. (Doc. 1.) Among other things, Plaintiff alleges that Officer Miller violated the Fourth Amendment's prohibition against the use of excessive force by, *inter alia*, allowing Toby to continue biting him for too long. (*Id.*)

On September 9, 2022, after the close of discovery, Officer Miller moved for summary judgment on the basis of qualified immunity. (Doc. 69.)

On July 3, 2023, the Court issued an order concluding that Officer Miller was not entitled to qualified immunity, at least at the summary judgment stage, with respect to Plaintiff's "duration and encouragement" claim. (Doc. 84.) However, the Court concluded that Officer Miller was entitled to qualified immunity as to Plaintiff's other theory of liability against him and that all of the remaining officers were also entitled to qualified immunity. (*Id.*)

On July 17, 2023, Officer Miller filed a notice of appeal of the order denying his request for qualified immunity as to the "duration and encouragement" claim. (Doc. 87.) Soon afterward, the Court granted Officer Miller's request to stay the proceedings as to that claim. (Doc. 93.)

III.    The Interlocutory Appeal

On August 14, 2024, the Ninth Circuit issued a unanimous memorandum decision affirming the July 2023 summary judgment order. (Doc. 98.) Among other things, the panel "affirm[ed] the district court's denial of qualified immunity as to Officer Miller, the canine handler, for allowing the dog to bite Rock for forty-one seconds even though Rock was unarmed and not resisting arrest. Our precedent clearly establishes that allowing a

canine bite to continue when the plaintiff neither endangers officers nor attempts to flee or resist arrest violates the Fourth Amendment." (*Id.* at 3.)

According to the Ninth Circuit's docket, on August 28, 2024, Officer Miller filed a petition for rehearing and rehearing *en banc*, and on September 26, 2024, that petition was denied. The order denying the petition stated that "[t]he full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc." Officer Miller did not thereafter request a stay, and on October 4, 2024, the mandate issued. (Doc. 99.)

IV.   Post-Remand Proceedings

On October 17, 2024, the Court ordered Officer Miller and Plaintiff to meet and confer and then identify mutually agreeable dates for trial in or after January 2025. (Doc. 100.)

On November 15, 2024, Officer Miller filed the pending motion for stay. (Doc. 103.)

On November 27, 2024, Plaintiff filed an opposition. (Doc. 104.)

On December 4, 2024, Officer Miller filed a reply. (Doc. 105.)

**DISCUSSION**

I.   The Parties' Arguments

Officer Miller seeks a stay of these proceedings pending the outcome of a writ for certiorari he intends to file by December 26, 2024. (Doc. 103.) According to Officer Miller, a stay is necessary because the disputed issue is the denial of qualified immunity, a doctrine intended to protect defendants from the burden of being unnecessarily subjected to the litigation process. (*Id.* at 3.) Officer Miller also contends that, under *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992), "[a] stay of proceedings is granted where a public official takes an appeal to assert a non-frivolous claim to absolute or qualified immunity." (*Id.* at 4.) Officer Miller argues that "as convicted as this Court (or the Ninth Circuit Court of Appeal) may have been as to the correctness of the decisions, they are subject to differing views at the High Court. This matter does not meet the frivolous standard necessary to

deny *Chuman*'s automatic stay, and this matter should not proceed until the U.S. Supreme Court either denies the prospective Petition for Writ of Certiorari, or renders a decision." (*Id.* at 5.) Officer Miller also elaborates at length as to why he believes the July 2023 summary judgment order and the Ninth Circuit's August 2024 decision were wrongly decided. (*Id.* at 6-18.)

Plaintiff opposes the stay request, arguing that Officer Miller has already "successfully delayed trial in this case by approximately eighteen months by appealing this Court's order to the Ninth Circuit Court of Appeals," which "affirmed this Court's decision in all respects," and that the Court should not allow Officer Miller "to delay the trial of this matter even further." (Doc. 104 at 1.) Plaintiff also contends that a stay would be futile because any petition for certiorari will be unable to satisfy the considerations governing review established by Supreme Court Rule 10. (*Id.* at 1-2.) Plaintiff further contends that *Nken v. Holder*, 556 U.S. 418 (2009), establishes the applicable standard for considering whether to grant a stay in this circumstance and that Officer Miller cannot satisfy the *Nken* standard because (1) Officer Miller "has not made a strong showing that he is likely to succeed with his Petition" and "[t]o the contrary, every indication is that it will be summarily denied"; (2) Officer Miller "has not presented a single fact as to how he would be irreparably harmed if the case proceeded forward—much less made that argument"; (3) "[d]elaying the trial further could result in the potential loss of evidence that could prejudice Plaintiff," including testimony from Plaintiff's "elderly father who is a main witness to the case" and "is beginning to experience the early onset of dementia"; and (4) the public interest "leans slightly in favor of Plaintiff" because "[t]he public has an interest in having their matters adjudicated within a reasonable amount of time after initiating an action and showing that a question of fact exists for a jury to determine." (*Id.* at 2-3.)

In reply, Officer Miller accuses Plaintiff of invoking the wrong standard for a stay and argues that when, as here, the sole disputed issue is the denial of qualified immunity, *Chuman* requires a stay absent a determination that an appeal would be frivolous. (Doc. 105 at 1-2.) Officer Miller continues: "The [*Nken*] analysis is irrelevant here because this

matter is governed by *Chuman* . . . . [T]his Court need not, and must not, rely on the *Nken* factors in deciding the stay issue." (*Id.* at 3.) Next, Officer Miller argues that his petition for certiorari will not be frivolous under Supreme Court Rule 10 because, among other things, the Ninth Circuit "engaged in flagrant and distinct disregard of U.S. Supreme Court authority" when affirming the denial of qualified immunity. (*Id.* at 3-5.) Officer Miller also notes that "even if this Court were to 'play the odds' of the High Court accepting review, the U.S. Supreme Court has shown a propensity to overrule the Ninth Circuit . . . when it comes to improper assessments of qualified immunity in § 1983 cases." (*Id.* at 5.)

II.     Analysis

Even assuming the Court possesses discretion to issue a stay in these circumstances,[1] Officer Miller's stay request fails on the merits. The key threshold issue is whether that request is governed by the *Chuman* standard or the *Nken* standard. Although Ninth Circuit law is not a model of clarity on this issue, the Court agrees with Plaintiff that the *Nken* standard is applicable.

It is helpful to begin with some background principles. *Nken* sets forth "the traditional criteria governing stays." *Nken*, 556 U.S. at 422. *See also United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020) (describing *Nken* as setting forth "the traditional test for stays"); *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (describing *Nken* as setting forth "the familiar standard" for evaluating a stay request). Meanwhile, *Chuman* addresses an entirely different question—when a district court should

---

[1] *But see Merchant v. Fairfax County, Va.*, 2012 WL 12830388, *1-2 (E.D. Va. 2012) ("This matter was returned to the district court by mandate of the Fourth Circuit on May 30, 2012, following that court's decision on appeal affirming this Court's decision on defendants' qualified immunity claim. Following the return of the mandate, the trial was set to commence on Tuesday, September 25, 2012. Now defendants seek a stay of the trial pending disposition of a recently filed certiorari petition. . . . Once the mandate has issued, a district court must, except in rare circumstances, implement both the letter and the spirit of the mandate. It is therefore inappropriate for a district court to issue a stay in these circumstances. The proper method for seeking a stay of a circuit court's mandate is to request a stay from either the issuing circuit court, under Rule 41(d)(2), or from the circuit justice, under Rule 23. In summary, defendants cite no statutory or precedential authority, and none has been found, that supports the proposition that the filing of a certiorari petition deprives a district court of jurisdiction to proceed to trial in accordance with the circuit court's mandate; only the circuit court or a justice of the Supreme Court may issue an order staying the mandate.") (cleaned up).

be deemed to *retain* jurisdiction even though a defendant has initiated an interlocutory appeal of a collateral order denying that defendant's claim of qualified immunity, which ordinarily has the effect of divesting the district court of jurisdiction over the matter being appealed. In this narrow "context of interlocutory qualified immunity appeals," *Chuman* holds that "[s]hould the district court find that the defendants' claim of qualified immunity is frivolous or has been waived, the district court may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial. In the absence of such certification, the district court is automatically divested of jurisdiction to proceed with trial pending appeal." 960 F.2d at 105. It was necessary to adopt this rule, *Chuman* explained, because the Supreme Court's decision in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), recognized an automatic right of interlocutory appeal from the denial of qualified immunity, which has the potential to "significantly disrupt and delay trial court proceedings." *Chuman*, 960 F.2d at 104-05.

  *Chuman* is inapplicable here because the posture of this case is no longer that of an "interlocutory qualified immunity appeal." Indeed, Officer Miller already pursued such an appeal—and the Court granted his request for a stay of the proceedings while it was pending (Doc. 93)—but that appeal has now concluded and the mandate has now issued. Because the Court has now regained jurisdiction, there is no need to make the sort of frivolousness determination contemplated by *Chuman*—which, again, is only necessary when (unlike here) a district court has been divested of jurisdiction due to the filing of a notice of appeal regarding an order that is immediately appealable pursuant to the collateral order doctrine. None of the cases cited by Officer Miller holds, or even suggests, that the *Chuman* standard applies in this post-remand context.

  In arguing otherwise, Officer Miller effectively seeks to characterize the filing of a petition for certiorari as a routine part of the appellate process that should be treated no differently than the filing of a notice of appeal. But this approach overlooks significant differences between the two actions. "The filing of a notice of appeal is an event of jurisdictional significance [that] confers jurisdiction on the court of appeals and divests the

district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). In contrast, there will be no jurisdiction-divesting effect if and when Officer Miller chooses to file a petition for certiorari. *See, e.g.*, *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 106 n.1 (1st Cir. 2016) ("[T]he mere act of filing a petition for certiorari does not deprive the district court of jurisdiction over the case."); *United States v. Sears*, 411 F.3d 1240, 1242 (11th Cir. 2005) ("The mere filing of a petition for certiorari with the Supreme Court neither stops the mandate from issuing nor stops the case from proceeding in the district court."); *United States v. Davis*, 2021 WL 1122574, *1 (E.D. Cal. 2021) ("[B]ecause the Ninth Circuit's mandate has issued, this court has jurisdiction to consider Mr. Davis's motion even though he has petitioned for certiorari in the Supreme Court."). These differences underscore why *Chuman* is inapplicable here—it is only meant to address a jurisdiction-divestiture issue that is inapplicable in this context.

It would also be anomalous if the *Chuman* standard applied here. As noted, the right to pursue interlocutory review of the denial of qualified immunity arises from *Mitchell v. Forsyth*, which held that "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." 472 U.S. at 529. Thus, under *Mitchell*, "an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal." *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996) (emphasis omitted). But the right of "immediate appeal" is simply the right to have the relevant Court of Appeals review the district court's denial of qualified immunity. Officer Miller received that right, and nothing in *Mitchell* or *Behrens* suggests it also encompasses the right to stay the proceedings while further, discretionary review is sought in the Supreme Court. In a related vein, Officer Miller could have asked the Ninth Circuit to stay the issuance of the mandate pending the resolution of his anticipated certiorari petition. However, under Rule 41(d)(1) of the Federal Rules of Appellate Procedure, Officer Miller would have needed to

"show that the [certiorari] petition would present a substantial question and that there is good cause for a stay." This is a more exacting standard than *Chuman*, which merely requires a showing of non-frivolousness. It would be perplexing if a litigant could take advantage of the lower standard simply by delaying the stay request until after the mandate issues.

Although not cited by the parties, the Court has identified a number of cases in which a district court denied a defendant's request for qualified immunity in a § 1983 action, the applicable Court of Appeals affirmed the denial of qualified immunity during the defendant's interlocutory appeal, and the defendant then asked the district court to issue a post-remand stay (either as to discovery or trial) pending the defendant's pursuit of a writ of certiorari. Such stay requests are routinely denied:

• *Bradley v. Benton*, 2021 WL 12313281, *1 (N.D. Ga. 2021) ("Benton seeks to stay litigation that has been pending for over three years. This case has already been stayed for almost a year and a half while Benton appealed this court's denial of qualified immunity to the Eleventh Circuit. . . . [I]t will likely be January 2022 at the earliest before this case will proceed to trial. Thus, the court does not find that Benton will suffer irreparable harm by having to file the proposed consolidated pretrial order, which, given that it is due in five days, should be substantially completed at this point. Should Benton's petition for certiorari be granted, he may renew his request for a stay. The motion to stay proceedings pending the filing of a petition for writ of certiorari is DENIED.").

• *Harte v. Bd. of Comm'rs of the Cnty. of Johnson Cnty., Kansas*, 2017 WL 4697506, *4 (D. Kan. 2017) (denying post-remand request for stay pending resolution of petition for certiorari in § 1983 action where the Tenth Circuit affirmed the district court's denial of qualified immunity: "Defendants direct the court to no authority suggesting that at this procedural juncture their right not to stand trial shields them from trial until they have exhausted all available avenues of relief, including the filing and resolution of a certiorari petition.").

• *Sanchez v. Hartley*, 2016 WL 7176718, *7 (D. Colo. 2016) ("While a stay of

discovery during the pendency of an interlocutory appeal is consistent with the goals underlying the doctrine of qualified immunity, the importance of balancing competing interests . . . leads me to the conclusion that Defendants' motion to continue the stay of discovery pending a decision on their petition for writ of certiorari should be denied.").

• *Wenk v. O'Reilly*, 2015 WL 4916934, *3 (S.D. Ohio 2015) (denying stay request in § 1983 action where the Sixth Circuit affirmed the district court's denial of qualified immunity at summary judgment and the defendant sought a stay pending the resolution of her petition for certiorari: "Plaintiffs . . . have already suffered greatly from the delay in obtaining relief. This case was filed more than three years ago. In addition, it has been over a year since this Court denied Defendant's summary judgment motion, and Defendants' appeal to the Sixth Circuit has already postponed a final adjudication of this action for over a year. The Court therefore concludes that the balance of the equities weigh against Defendant's request.").

• *Lowery v. County of Riley*, 2008 WL 3562061, *2 (D. Kan. 2008) ("Defendants . . . [seek] the continued stay of all discovery in this case pending decision by the U.S. Supreme Court. The Court might agree had there been a dissenting opinion in the Tenth Circuit appeal or some indication that the decision by the Tenth Circuit was in conflict with those of other circuits or was a case of first impression. None of these circumstances are present in this case. There was no dissenting opinion, and only one judge out of the thirteen judges who considered the Petition for Rehearing En Banc voted to grant the motion. Nothing in the Tenth Circuit opinion indicates that it presents a case of first impression on a unique issue of law or that it is contrary to decisions of other circuits. While this is no guarantee that the Supreme Court will deny a petition for certiorari, it is a major indication of the difficulty Defendants face in convincing the Supreme Court that discretionary review is justified in this case. Thus, the present circumstances are significantly different than they were at the time this court previously refused to allow discovery to proceed during the Tenth Circuit appeal.").

• *McMillan v. DeKalb County, Ga.*, 2007 WL 9700671, *1-2 (N.D. Ga. 2007)

("Defendants think that going to trial now would be 'erroneous[ ]' in light of the possibility that the Supreme Court might at some later date grant certiorari and overturn both the finding of the district court and the Eleventh Circuit's unanimous affirmation of that decision. Of course, Defendants do not cite any cases from this jurisdiction or any other suggesting that such a course of action would be appropriate. Needless to say, the Eleventh Circuit case Defendants cite for the proposition that 'proceedings in the district court are properly stayed upon the filing of a non-frivolous interlocutory appeal with the Circuit Court of Appeals,' is inapposite. Unlike appeals from an order denying qualified immunity, which are immediately appealable even though interlocutory, petitions for writ of certiorari are far from automatically successful. . . . Defendants here have simply failed to convince the court that their petition is likely to be granted by the Supreme Court and thus that it would be 'erroneous' for this court to proceed to trial without delay. On the contrary, Defendants have had the opportunity to argue their position to both this court and to the Court of Appeals without success, and they have likewise failed to show this court that the Supreme Court will view the matter in a different light. As such, the court DENIES Defendants' Expedited Motion to Stay/Continue District Court Proceedings Pending Petition for Certiorari.") (cleaned up).

The Court finds these decisions persuasive in considering how to proceed here. Under the *Nken* standard—which, as discussed, is the "traditional" standard for evaluating a stay request—"[a] stay is not a matter of right, even if irreparable injury might otherwise result. . . . It is instead an exercise of judicial discretion, [that] is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (citations and internal quotation marks omitted). "Judicial discretion in exercising a stay is to be guided by the following legal principles, as distilled into a four factor analysis in *Nken*: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (citation

1 omitted). The first two of these factors "are the most critical." *Nken*, 556 U.S. at 434.
2 "The party requesting a stay bears the burden of showing that the circumstances justify an
3 exercise of that discretion." *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1246
4 (9th Cir. 2018) (citation omitted).

5 As an initial matter, because Officer Miller denies that the *Nken* standard applies,
6 he has made no attempt to satisfy it. This, alone, makes it difficult to see how he could be
7 deemed to have met his burden. Regardless, his stay request fails under *Nken* on the merits.
8 As for the first factor, Officer Miller has not made a strong showing that he is likely to
9 succeed on the merits. All four judges to have considered the issue thus far have concluded
10 that Officer Miller is not entitled to qualified immunity on Plaintiff's "duration and
11 encouragement" claim and not a single member of the Ninth Circuit believed that
12 determination warranted *en banc* review. Moreover, although Officer Miller is correct that
13 the Supreme Court has often reversed the Ninth Circuit in cases involving the denial of
14 qualified immunity, it strikes the Court as unlikely that the Supreme Court would grant
15 certiorari where, as here, the underlying appellate decision is unpublished and the claims
16 of error that are largely factual in nature.

17 The analysis of the second factor is bound up with the analysis of the first factor—
18 even assuming Officer Miller would suffer irreparable harm if forced go to trial in a case
19 in which the claims against him should have been dismissed before trial based on qualified
20 immunity, the Court does not believe that qualified immunity was improperly denied here.

21 Turning to the third factor, as discussed in many of the decisions cited above,
22 Plaintiff would be substantially injured by being forced to endure even more delay in this
23 case, which has already been pending for over four years and arises from an incident that
24 occurred over five years ago. Plaintiff's concerns over the ability of his elderly father to
25 testify only amplify the need to avoid further delay.

26 Finally, the fourth factor either slightly favors Plaintiff or is neutral for the reasons
27 identified in Plaintiff's brief: "The public has an interest in having their matters adjudicated
28 within a reasonable amount of time after initiating an action and showing that a question

1  of fact exists for a jury to determine." (Doc. 104 at 3.)

2  When the Court weighs all of these factors, it concludes in its discretion that a stay
3  is not warranted.[2]

4  Accordingly,

5  **IT IS ORDERED** that Officer Miller's motion for stay (Doc. 103) is **denied**.

6  **IT IS FURTHER ORDERED** that the parties must meet and confer and, within
7  seven days of the issuance of this order, file a notice providing an estimated length of trial
8  and at least three dates in or after March 2025 on which counsel, the parties, and their
9  witnesses will be available to begin trial.

10  Dated this 13th day of December, 2024.

Dominic W. Lanza
United States District Judge

---

[2] This denial comes with a caveat—should Plaintiff's "petition for certiorari be granted, he may renew his request for a stay" at that time. *Bradley*, 2021 WL 12313281 at *1. But for the reasons discussed above, unless and until that occurs, a trial date should be set and pretrial preparations should commence.

- 12 -